IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:04CV570

CURTIS MICHAEL ALEXANDER, )
)
    Plaintiff, )
)
v. ) ORDER
)
THE UNIVERSITY OF NORTH CAROLINA )
AT CHARLOTTE, )
)
    Defendant. )
)

**THIS MATTER** is before the Court on the following Motions and Memoranda: (1) Defendant's Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss, both filed February 2, 2005; (2) Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, filed April 15, 2005; (3) Plaintiff's Motion to Amend Complaint to Correct Inadvertent Omission of Party, filed April 15, 2005; and (4) Defendant's Reply to Plaintiff's Opposition to Dismiss and Response to Plaintiff's Motion to Amend Complaint, filed May 13, 2005. These Motions are now ripe for disposition by the Court.

For the below-stated reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss and deny Plaintiff's Motion to Amend.

## I. FACTUAL AND PROCEDURAL HISTORY

For purposes of this Motion to Dismiss, the Court accepts the following facts derived from Plaintiff's Complaint as true. *See Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 189 (4th Cir. 2002) (noting that "at the motion to dismiss stage, a court must accept the

1

allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff").

Plaintiff Curtis Michael Alexander ("Plaintiff" or "Mr. Alexander") suffers from cerebral palsy, which requires him to use a wheelchair for mobility. (Compl. ¶ 13). Mr. Alexander is unable to walk unassisted and has the services of an attendant to help him with his daily activities, including dressing and bathing. (*Id.*). Since July of 2003, Mr. Alexander has been enrolled as a student at the University of North Carolina at Charlotte ("Defendant" or "UNCC"). (*Id.* ¶ 16). During his freshman year at UNCC, Mr. Alexander lived on the first floor of Oak Hall, a campus dormitory, in which he had an accessible room that accommodated his physical needs. (*Id.* ¶ 17). The room also has a sufficiently large bathroom, which allowed Mr. Alexander and his attendant to take care of his toileting and grooming needs. (*Id.*).

In order to live on campus, Mr. Alexander had a daytime attendant who, at the time of the filing of this case, was Kim Massey. (*Id.* ¶ 18). Ms. Massey had worked with Mr. Alexander for almost five years. (*Id.*). UNCC does not fund Mr. Alexander's attendant services. (*Id.*).

Mr. Alexander completed his freshman year on May 12, 2004, and anticipated attending UNCC's 2004 summer session. (*Id.* ¶ 16). In fact, Mr. Alexander applied for summer housing on March 24, 2004. (*Id.* ¶ 50). At some point, UNCC decided to assign all summer school students to live in Martin Village, a housing complex on campus. (*Id.* ¶¶ 22, 24). Martin Village was located further from the classroom buildings than Oak Hall. (*Id.* ¶ 22).

On April 6, 2004, Delores Alexander ("Ms. Alexander"), Mr. Alexander's mother, met with John Storch, the Associate Director for Operations, Housing and Residence Life at UNCC, about Mr. Alexander's housing needs. (*Id.* ¶¶ 20, 24). Mr. Storch provided Ms. Alexander with a

map indicating Mr. Alexander's residence for the summer, which was to be in Martin Village, room number M-101. (*Id.* ¶ 24). At this same meeting, Ms. Alexander was advised that the UNCC staff would simultaneously move Mr. Alexander's equipment and hospital bed from Oak Hall into Martin Village prior to the start of the summer sessions. (*Id.* ¶ 25).

On May 19, 2004, Mr. Alexander, Ms. Alexander and Sheena Harris, Mr. Alexander's second shift attendant, toured room M-101. (*Id.* ¶ 27). This tour revealed that the bathroom was too small for Mr. Alexander to get inside with both his attendant and his wheelchair, and he could not close the door. (*Id.*). Moreover, the desks were not useable by Mr. Alexander. (*Id.*). The area outside M-101 was also a concern because it was steep with broken and uneven pavement, making it dangerous for Mr. Alexander to maneuver his wheelchair. (*Id.* ¶ 29). Furthermore, Martin Village bordered on a parking lot that did not have a curb cut, which prevented Mr. Alexander from accessing the sidewalk. (*Id.* ¶¶ 22, 23).

Subsequently, on May 20, 2004, Ms. Alexander called JoAnn Fernald, the Interim Director of UNCC's Disability Services Office, to discuss the Alexanders' concerns regarding Mr. Alexander residing in M-101 for the summer. (*Id.* ¶¶ 19, 30). Ms. Fernald indicated that other individuals in wheelchairs lived in Martin Village but stated that Mr. Alexander would be reassigned to room J-101 in order to have more suitable housing. (*Id.* ¶¶ 30-31). The Alexanders were not shown the inside of room J-101, but felt this reassignment was inappropriate as they had seen the area around J-101 and it also had pavement problems. (*Id.* ¶ 31).

On May 24, 2004, Ms. Alexander arranged with Patrick Hemphill, a Rehabilitation Counselor, and Michael Edwards, a Rehabilitation Engineer, to inspect Martin Village the following day. (*Id.* ¶ 32). On May 25, 2004, Mr. Alexander, Ms. Alexander, and Ms. Massey

3

met with Ms. Fernald and Kelly Gray, UNCC's Assistant Director of the Office of Disability Services. (*Id.* ¶ 33). Subsequent to this meeting, all of these individuals, as well as Mr. Storch, met with Mr. Hemphill and Mr. Edwards at Martin Village. (*Id.*). Although students were slated to move into Martin Village on May 27, 2004, UNCC had still not installed a curb cut, graded or resurfaced the pavement, or installed a railing on the pathway to the building where Mr. Alexander was to live. (*Id.* ¶ 34). The Alexanders were advised that installation of the curb cut would not occur until the following week. (*Id.* ¶ 35).

During this same visit, the Alexanders were able to tour room J-101. (*Id.* ¶ 36). This tour revealed that in no event could Mr. Alexander get his entire wheelchair to fit into the bathroom. (*Id.*). Mr. Hemphill expressed both to the Alexanders as well as to Ms. Massey that Martin Village was not accessible for Mr. Alexander and advised them that he would so inform UNCC and ask that more accessible housing be found. (*Id.* ¶ 38). On the same day as his visit to Martin Village, Mr. Hemphill spoke with Ms. Fernald regarding these accessibility issues. (*Id.*).

On May 27, 2004, which was the day for summer students to move into Martin Village and the day before summer classes were to begin, Ms. Alexander again contacted Ms. Fernald regarding the Alexander's concern that Mr. Alexander's hospital bed and exercise equipment had been moved to Martin Village despite Mr. Alexander's inability to reside there. (*Id.* ¶ 39). Mr. Alexander was given the option of either moving into Martin Village or moving back to Oak Hall. (*Id.* ¶ 45). The move back to Oak Hall, however, was contingent on Mr. Alexander signing a waiver letter. (*Id.*). On May 28, 2004, during a meeting attended by the Alexanders, Mr. Storch and Ms. Fernald, Mr. Alexander declined to sign the waiver letter as the information contained within the letter was erroneous and required Mr. Alexander to forfeit his legal rights. (*Id.* ¶ 47).

Due to Mr. Alexander's inability to reside in Martin Village, he lived at home during the first and second sessions of summer classes and largely depended on Ms. Alexander for transportation. (*Id.* ¶ 49). Consequently, on November 16, 2004, Plaintiff filed the instant lawsuit against UNCC, alleging the following causes of action: (1) violation of Title II of the Americans with Disabilities Act; (2) violation of Section 504 of the Rehabilitation Act of 1973, as amended; and (3) violation of Chapter 168A of the North Carolina General Statutes. Plaintiff seeks to recover both injunctive relief and monetary compensation.

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Standard of review.

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. *Suarez v. Charlotte-Mecklenburg Schs.*, 123 F. Supp. 2d 883, 885-86 (W.D.N.C. 2000) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In considering a Rule 12(b)(6) motion to dismiss, the Court must take the allegations in the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *GE Inv. Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) "[Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jackson v. Blue Dolphin Communications of N.C., L.L.C.*, 226 F. Supp. 2d 785, 788-89 (W.D.N.C. 2002) (brackets in original) (quoting *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997)).

To survive a Rule 12(b)(6) motion, "a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged

5

occurrence and which, if proven, will justify some form of relief." *Jackson*, 226 F. Supp. 2d at 789 (citation omitted). A motion to dismiss is not limited to claims of law which are obviously unsupportable; rather if, as a matter of law, it is obvious that no relief could be granted under any set of fact alleged by the plaintiff, the claim must be dismissed. *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827 (1989)).

What a Rule 12(b)(6) motion does not permit, however, is dismissal of a claim based on disbelief of the factual allegations contained in the complaint. *Id.* "If 'relief could be granted under any set of facts that could be proved consistent with the allegations,' the motion must be denied." *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## 2. Title II of the Americans With Disabilities Act

Plaintiff's first cause of action against Defendant alleges a claim pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). In its Motion to Dismiss, Defendant argues that as an entity of the State, it is entitled to an Eleventh Amendment immunity defense. (Def. Mem. in Supp. pp. 5-8). In response, Plaintiff states that the Eleventh Amendment immunity may apply to Plaintiff's requested monetary damages but would not prohibit recovery of injunctive relief. (Pl. Mem. in Opp'n pp. 3-5).

The Eleventh Amendment of the Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. 11. Therefore, "an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Congress, however, may abrogate a

6

State's Eleventh Amendment immunity, but only where Congress: (1) stated unequivocally its desire to do so; and (2) exercised valid constitutional authority. *Constantine v. Rectors & Visitors of George Mason Univ.*, – F.3d –, No. 04-1410, 2005 WL 1384373 at *6 (4th Cir. June 13, 2005) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996)).

With regard to the ADA, Congress provided that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or state court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court recognized that this provision clearly and unambiguously expresses Congress' intent to abrogate the States' Eleventh Amendment immunity with respect to claims brought pursuant to the ADA. *See Tennessee v. Lane*, 124 S.Ct. 1978, 1985 (2004). Therefore, only the second issue has been left pending: did Congress have constitutional authority to give effect to its intent. *Id.*

The Fourth Circuit recently addressed this issue. *See Constantine v. Rectors & Visitors of George Mason Univ.*, – F.3d –, 2005 WL 1384373 at *12. Using analysis employed by the Supreme Court in *Tennessee v. Lane*, 124 S.Ct. 1978 (2004), the Fourth Circuit considered whether the accommodation requirement of Title II, as it applies to cases involving the administration of higher education programs, was a valid exercise of Congress' constitutional authority. *Id.*[1]

In answering this question the Fourth Circuit first identified the Fourteenth Amendment right that Congress purportedly sought to enforce through the enactment of Title II, which was

---

[1] The Fourth Circuit emphasized that the *Lane* decision did not resolve the specific question presented in the *Constantine* matter as the Supreme Court explicitly limited its decision in *Lane* to Title II as it applies to the class of cases implicating the fundamental right of access to the courts. *Constantine*, 2005 WL 1384373 at *8. The Fourth Circuit *did* note, however, that analysis employed by the Supreme Court in *Lane* was applicable to the *Constantine* matter. *Id.*

7

the "'prohibition on irrational disability discrimination.'" *Id.* at * 8 (quoting *Lane*, 124 S.Ct. at 1988). After identifying this right, the Fourth Circuit then considered the extent to which Title II was responsive to or designed to prevent, unconstitutional behavior. *Id.* at *9. The Fourth Circuit noted that "Title II was enacted in response to a pattern of unconstitutional disability discrimination by States and nonstate government entities with respect to the provision of public services." *Id.* Thus, the remaining question for the *Constantine* court was whether the remedial measures contained in Title II represented a congruent and proportional response to the demonstrated history and pattern of unconstitutional disability discrimination. *Id.* at **9-10. The Court found that in light of the "pattern of unconstitutional disability discrimination described by the Court in *Lane*, [it] cannot say that Title II is 'so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.'" *Id.* at *12 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997)). From these findings, the Fourth Circuit concluded that since "Congress clearly expressed its intention to abrogate the States' Eleventh Amendment immunity, and did so pursuant to a valid exercise of constitutional authority, the Eleventh Amendment poses no bar to [a plaintiff's] claims under Title II of the ADA." *Id.*

In light of the Fourth Circuit's decision, the Court here finds that the Eleventh Amendment is *not* a bar to Plaintiff's claims under Title II of the ADA. Therefore, the Court will deny Defendant's Motion to Dismiss with regard to Plaintiff's ADA claim.

### 3. Section 504 of the Rehabilitation Act

Defendant further urges the Court to dismiss Plaintiff's second cause of action, which Plaintiff brought pursuant to Section 504 of the Rehabilitation Act of 1973, as amended, 29

8

U.S.C. § 794(a) ("Section 504"). Defendant contends that Plaintiff failed to allege in his Complaint three of the four requisite elements of this claim. In response, Plaintiff argues that all required elements for a Section 504 claim were sufficiently alleged in the Complaint.

Section 504 provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Thus, any 'program or activity' – including all the operations of a university or other postsecondary institution . . . – that receives federal funding must not discriminate on the basis of disability." *Constantine*, – F.3d –, 2005 WL 1384373, at *12 (June 13, 2005 4th Cir.). Section 504 may be enforced through private causes of action and States are not immune from federal suits to enforce this provision. *Id.* (citing *Barnes v. Gorman*, 536 U.S. 181, 185 (2002); 42 U.S.C. § 2000d-7). To succeed on a Section 504 claim a plaintiff must establish that: (1) he has a disability; (2) he is otherwise qualified; (3) he was excluded from participation in, was denied the benefits of, or was subjected to discrimination on the basis of his disability; and (4) that the defendant receives federal financial assistance. *Doe v. University of Maryland*, 50 F.3d 1261, 1265 (4th Cir. 1995); *Constantine*, – F.3d –, 2005 WL 1384373, at *19.

As noted above, "[d]ismissal is not appropriate under Rule 12(b)(6) 'unless it appears certain that the plaintiff can prove no set of facts which would support [her] claim and would entitle [her] to relief.'" *Constantine*, 2005 WL 1384373, at *19 (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Defendant concedes that Plaintiff sufficiently alleged element one - that Mr. Alexander has a disability. (Def. Mem. of Law in Supp. of Mot. to

9

Dismiss p. 8). Defendant contends, however, that Plaintiff did not sufficiently allege any of the other three elements. The Court is unpersuaded.

With regard to the second element - that Mr. Alexander is otherwise qualified - an individual is "qualified" if he is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). According to the Complaint, Mr. Alexander "is a competent adult individual who is enrolled as a student at The University of North Carolina at Charlotte." (Compl. ¶ 12). "Curtis Michael Alexander has been enrolled as a student at the University of North Carolina at Charlotte since July of 2003. He completed his freshman year on or about May 12, 2004, and intended to attend summer sessions at UNCC." (Id. ¶ 16). The Court finds that taken together, these allegations are sufficient to make a *prima facie* showing that Mr. Alexander met the essential eligibility requirements for participation in UNCC's summer school program.

Under Section 504, a plaintiff must also show that he was excluded from participation in, or denied the benefits of, a program or service offered by a public entity *or* subjected to discrimination by that entity due to his disability. *See* 29 U.S.C. § 794(a). The Court finds that the Complaint here sufficiently alleges that UNCC denied Mr. Alexander the benefit of campus housing during the summer sessions and discriminated against Mr. Alexander on the basis of his disability. (*See, e.g.,* Compl. ¶¶ 5, 19, 40-50, 54-57). If the allegations in the Complaint are true, then Mr. Alexander can demonstrate that Defendant excluded him from campus housing, or denied him the benefits of such housing, or at least discriminated against him with regard to the prohibitive summer housing on the basis of his disability. Whatever may occur at another stage

10

of this litigation, there are sufficient allegations in the Complaint to establish the third element of a Section 504 claim for purposes of a Rule 12(b)(6) motion.

Finally, a review of the Complaint leads the Court to conclude that Plaintiff sufficiently alleged that Defendant is the recipient of federal funds. Specifically, Plaintiff alleges that "Section 504, passed years earlier, applies to entities, including colleges and universities, that receive federal funds." (Compl. ¶ 2). Moreover, Plaintiff asserts that"[a]ll of the actions set forth in the preceding paragraphs that constituted violations of Title II of the ADA likewise violated Section 504 of the Rehabilitation Act of 1973, as amended. UNCC engaged in disability-based discrimination that violated the civil rights of Curtis Michael Alexander." (Compl. ¶ 53).

Construing the allegations in Complaint in the light most favorable to Plaintiff, as it must, the Court finds that Plaintiff has sufficiently alleged all elements to overcome Defendant's Rule 12(b)(6) Motion to Dismiss on its Section 504 claim.

### 4. North Carolina General Statute Section 168A-11

Defendant also argues that Plaintiff's claim pursuant to Chapter 168A of the North Carolina General Statutes is subject to dismissal by the Court because Defendant's Eleventh Amendment immunity prohibits the Court from considering Plaintiff's claim that a State agency or its officials violated state law. Citing North Carolina General Statute Section 168A-11(c), Defendant further argues that since Plaintiff has pending claims under both the ADA and the Rehabilitation Act, Plaintiff is statutorily barred from asserting the state law claim.

In response, Plaintiff voluntarily withdrew the state law claim. (Pl. Mem. of Law in Opp'n p. 10). Consequently, the Court will dismiss Plaintiff's third cause of action brought under North Carolina General Statute Section 168A.

11

## B. Motion to Amend Complaint

Plaintiff asks the Court for leave to amend its Complaint to add Dr. James W. Woodward, in his official capacity as Chancellor of the University of North Carolina at Charlotte, as a defendant in this litigation. Plaintiff contends that it inadvertently failed to add Dr. Woodward as a party to the initial Complaint, and states that it believes Dr. Woodward is already aware of this lawsuit and will not be surprised by having his name added as a defendant. In response, Defendant argues, among other things, that Plaintiff's amendment is both futile and fails to satisfy the requisites in Rule 15(c)(3) of the Federal Rules of Civil Procedure.

"A party may amend the party's pleading only by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Discretion to deny leave to amend is limited by the principle in Rule 15(a) and by the general policy in the Federal Rules favoring resolution of cases on their merits. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (citing Fed. R. Civ. P. 10). However, if a plaintiff seeks to add an additional party against whom the statute of limitations has already run, such amendment may be futile unless the amendment to the complaint relates back to the date the original complaint was filed. *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). The amendment of a complaint to add an additional party relates back to the original complaint when: (1) the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth in the original complaint; (2) the party to be added by amendment received such notice of the institution of the action, within the period provided by Rule 4(m) for service of the summons and complaint, that it will not be prejudiced in maintaining a defense on the merits; and (3) the party to be added "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would

have been brought against the party." Fed. R. Civ. P. 15(c)(3).

For purposes of the discussion here, the Court will presume that Plaintiff could establish that the allegations against Chancellor Woodward arise out of the same conduct, transaction, or occurrence set forth in the original Complaint. A review of the other conditions of Rule 15(c)(3) lead the Court to conclude, however, that relation back to the original Complaint in this instance is improper.

The second condition of Rule 15(c)(3) provides not only for notice of the institution of the action but also notice to the potential defendant that he could be a party in that action. *Western Contracting Co. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989). "Such notice must be received within the limitations period." *Id.* (citing *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). "Notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." *Id.* (citing *Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1258 (11th Cir. 1983)).

Here, the Court finds that Chancellor Woodward does not have sufficient identity or interest with Defendant so as to have received either formal or informal notice of the claims against UNCC. There is no allegation that Chancellor Woodward was aware of or participated in the alleged disability discrimination against Plaintiff. Consequently, the Chancellor would have no reason to believe or have notice that he could be a defendant in this action.

Not only did Chancellor Woodward not have notice of the possibility of his participation in this lawsuit as a defendant but Plaintiff also cannot establish that the Chancellor "knew or should have known that, but for a mistake concerning the identity of the proper party, the action

would have been brought against the [Chancellor]." *Western Contracting Corp.*, 885 F.2d at 1201 (citing Fed. R. Civ. P. 15(c)). Plaintiff states that Chancellor Woodward was "listed in Paragraph 14, a paragraph under the heading of "Parties" in the Complaint, but his name was inadvertently omitted in the caption of the case as a Defendant being sued in his official capacity." (Pl. Mot. to Amend p. 1). A review of the Complaint leads the Court to conclude that it is a far stretch to believe that Paragraph 14 indicates that Chancellor Woodward was originally intended to be a party to this lawsuit. Paragraph 14 reads in its entirety as follows:

> The University of North Carolina at Charlotte [hereinafter "UNCC"] is a four year, state supported institution of higher learning that is a branch of the University of North Carolina, which consists of sixteen institutions. UNCC has had that status since 1965. Current enrollment at UNCC is believed to be around 18,000 students. According to the UNCC website, Dr. James H. Woodward is the Chancellor.

(Compl. ¶ 14). Read in context, the Court believes that the statement regarding Chancellor Woodward was not intended to include the Chancellor as a party to this lawsuit but was meant as a description of the leadership of UNCC. The Court does not find that this buried statement evidences that Plaintiff mistakenly failed to include the Chancellor as a party, nor could the Chancellor, from this statement or otherwise, have known that, but for such mistake the action would have been brought against him.

For the reasons stated above, the Court concludes that if Plaintiff were to add Chancellor Woodward as a defendant, the allegations against the Chancellor would not relate back to the date of filing of the original Complaint. The statute of limitations for ADA and Section 504 claims is 180 days after the date on which the plaintiff became aware of the alleged discriminatory conduct. *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 132 (4th Cir.

14

1994); *Stroud v. Harrison*, 131 N.C. App. 480, 486, 508 S.E.2d 527, 530 (1998). The Plaintiff in this case was allegedly subjected to discrimination in or about May 2004. (Compl. ¶ 50). The 180-day statute of limitations for bringing claims either under the ADA or the Rehabilitation Act has run. Since Plaintiff's claims against Chancellor Woodward do not relate back to the filing of the original Complaint, the time for Plaintiff to bring allegations against the Chancellor has expired. Therefore, allowing Plaintiff to amend the Complaint to add Chancellor Woodward as a defendant is futile and the Court will <u>deny</u> Plaintiff's Motion to Amend Complaint. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (stating that "[w]here the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied") (citations omitted).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss is hereby **DENIED** with regard to Plaintiff's First Cause of Action and Second Cause of Action.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is hereby **GRANTED** with regard to Plaintiff's Third Cause of Action.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion to Amend Complaint to Correct Inadvertent Omission of Party" is hereby **DENIED**.

IT IS SO ORDERED THIS _____ day of August, 2005.

GRAHAM C. MULLEN
**CHIEF UNITED STATES DISTRICT JUDGE**

15